IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 5-12-bk-00696-RNO |
| MICHAEL T. DOMBROSKI | : | |
| | : | CHAPTER 7 |
| Debtor | : | |
| ******************************* | : | ****************************** |
| ERIE MATERIALS, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL T. DOMBROSKI, | : | |
| | : | |
| Defendant | : | ADVERSARY NO. 5-12-ap-00156-RNO |

**OPINION**[1]

Pending before the Court is a Motion for Summary Judgment by the Plaintiff, Erie Materials, Inc. ("Erie" or "Plaintiff"), filed on August 1, 2012. For the reasons stated herein, the Motion for Summary Judgment is denied and the matter will proceed to trial.

**I.      Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**II.     Facts and Procedural History**

On February 7, 2012, Michael T. Dombroski ("Dombroski" or "Defendant"), filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

On May 31, 2012, Plaintiff filed a timely Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523 ("Complaint"). The Complaint prays this Court to find

---

[1] Drafted with the assistance of Joseph C. Barsalona, II, Law Clerk

Dombroski's obligation due to Plaintiff via a Promissory Note and Confession of Judgment dated December 31, 2010, ("Note") to be deemed nondischargeable under 11 U.S.C. § 523(a)(4).[2] The total sum at issue is $41,439.42.

According to the Complaint, Dombroski is a general contractor in the Commonwealth of Pennsylvania. Compl. ¶ 6. As such, it is alleged that he buys materials from regional suppliers and makes contracts to pay for the materials after he is paid by his clients. Plaintiff alleges that Defendant purchased construction materials from it and the parties signed the Note on December 31, 2010, in lieu of direct payment to Erie. Compl. ¶ 7. Via the language in the Note, Plaintiff contends, the materials sold to Defendant are governed by McKinney's Lien Law § 70, ("N.Y. Lien Law") which would make Defendant the trustee, and Plaintiff the beneficiary, of all proceeds stemming from the sale of the materials. Compl. ¶ 10-12; Pl.'s Aff. ¶ 7.

In his Answer filed on June 6, 2012, Defendant contends that he did not transact with Plaintiff directly (Erie's principal place of business is in Syracuse, New York), but instead with an affiliate of Erie located in Scranton, Pennsylvania. Def. Answer ¶ 8. The import of this fact, he argues, is that the Note should be governed by Pennsylvania law because the materials were purchased in Pennsylvania to be used in Pennsylvania. Def. Answer ¶ 10. As a result, he argues, a trust was never created between the parties. Def. Answer ¶ 10.

Although the parties debate over when the Note was signed in relation to the transactions, Defendant began making payments of $500.00 per week to Erie on January 7, 2011. Pl.'s Aff. ¶ 8. These payments ceased as of September 23, 2011. Ex. C to Statement of Material Facts.

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

This Adversary Proceeding followed.

Plaintiff's Motion for Summary Judgment was filed on August 1, 2012. That same day, Erie filed a Statement of Material Facts and an Affidavit by Mr. Kevin C. Burke, Director of Credit and Finance for Erie, one of the signatories to the Note. In essence, the Affidavit states that Defendant was represented by counsel throughout the negotiations of the Note and that Erie's intentions were to have New York law govern the transaction. Pl.'s Aff. ¶ 6-7.

This Court issued an Order requiring Dombroski to file a response to Erie's Motion within twenty-one days of service on August 3, 2012. Thereafter, Defendant filed a Motion requesting an extension to file on August 15, 2012, which the Court granted one day later. As a result, Defendant's deadline to submit his own statement of material facts extended to September 4, 2012. The requisite filing was never made.

On September 18, 2012, Defendant instead filed a Memorandum of Debtor to Status of His Position on Motion for Summary Judgment claiming a miscommunication between Dombroski and his counsel led to the failure to file. Erie filed a Reply Brief on September 25, 2012. Nothing new was pled in these two filings, and therefore, this matter is ripe for decision.

## III. Discussion

### A. Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 incorporates, and makes applicable to bankruptcy adversary proceedings, Rule 56 of the Federal Rules of Civil Procedure. Pursuant to F.R.C.P. 56(a), the Court shall grant summary judgment to the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is, therefore, the movant's burden to

3

prove the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material for summary judgment purposes if, under applicable substantive law, it may affect the outcome of the case. *Celotex Corp.* at 325. Once the moving party shows the absence of genuine issues of material fact, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Celotex Corp.* at 322, n.3. Throughout the analysis, the Court must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001).

Local Bankruptcy Rule 7056-1 makes the U.S. District Court for the Middle District of Pennsylvania Local Rule 56.1 applicable to adversary proceedings like the case at bar. Local District Court Rule 56.1 requires the movant to file a "separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried," with references to the specific parts of the record that support the statements. M.D. Pa. R. 56.1. Likewise, the non-moving party is obligated to respond with a "separate, short and concise statement" of their own material facts, in order to support the assertion that there exists "a genuine issue to be tried." M.D. Pa. R. 56.1 Furthermore, the moving party's material facts will be "deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. R. 56.1.

As noted, the Defendant failed to oppose Erie's Statement of Material Facts with a filing of his own. The effect of Defendant's non-action is that the facts in the Plaintiff's filing are deemed admitted. However, this does not automatically warrant summary judgment; Plaintiff must still prove that summary judgment is appropriate. *Anchorage Associates v. Virgin Islands*

*Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *Stallworth v. Reheis Co.*, No. 05-202, 2007 WL 1876495 at *4 (D.N.J. June 27, 2007).

  **B.**  **Fraud or Defalcation While Acting in a Fiduciary Capacity**

  The Complaint seeks the determination that the debt owed by Defendant under the Note is non-dischargeable pursuant to § 523(a)(4).

  A creditor objecting to discharge of a debt owed to it by a debtor in bankruptcy has the burden of proving, by a preponderance of the evidence, that the debt falls into one of the exceptions found in § 523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279 (1991). Furthermore, in light of the overriding purpose of the Bankruptcy Code, exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995); *In re Kennedy*, 442 B.R. 399, 403 (Bankr. W.D.Pa. 2010). Section 523(a)(4) provides:

> **(a)** A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
>   **(4)** for fraud or defalcation while acting in a
>   fiduciary capacity, . . .

  The term "fiduciary capacity" in the context of § 523(a)(4) is a narrow concept that is determined by federal bankruptcy law, not state law. *Estate of Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 777 (Bankr. E.D.Pa. 2004); *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (Bankr. M.D.Pa. 1995). Because the traditional state definition of 'fiduciary' is "far too broad for the purposes of bankruptcy law," *Librandi*, 183 B.R. at 382 (quoting *Matter of Rausch*, 49 B.R. 562, 564 (Bankr. D.N.J. 1985), § 523(a)(4) requires a more stringent set of facts to create a fiduciary relationship, i.e., the existence of an express or technical trust. *Villas at Bailey Springs Homeowners Ass'n, Inc. v. LaRicci*, No. 1:10-CV-1952, 2011 WL 4591962, at *2

5

(M.D.Pa. Sept. 30, 2011).

Although federal law defines "fiduciary capacity," state law is crucial in determining whether an express or technical trust exists. *Dawley*, 312 B.R. at 777; *United States v. Bagel (In re Bagel)*, No. 92-11440, 1992 WL 477052, at *13 (Bankr. E.D.Pa. Dec. 17, 1992). In the past, bankruptcy courts across the three districts of Pennsylvania have used Pennsylvania's state-law rules of trust formation to determine the ultimate federal question of "fiduciary capacity." *See, e.g., Dawley*, 312 B.R. at 777; *Verrone v. Verrone (In re Verrone)*, 277 B.R. 66, 72 (Bankr. W.D.Pa. 2002); *Griffith v. Taylor (In re Taylor)*, 195 B.R. 624, 629 (Bankr. M.D.Pa. 1996). Before I use a particular state's law on trust formation, though, I must first determine if a particular state law was effectively chosen in the parties' contract. Since the trust, or lack thereof, stems from the Note, the analysis on which law governs the Note is our starting point.

C.      **Choice-of-Law**

As a threshold issue, the Court must undertake a choice-of-law analysis to decide which law will determine whether the alleged choice-of-law provision is enforceable. *See Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 5 (3d Cir. 1988) (conflicts of law principles are threshold issues to be determined prior to enforceability). In simpler terms, there must be a choice-of-law analysis to determine the validity of the parties' choice-of-law provision.

To answer a choice-of-law issue, federal courts are required to apply the choice-of-law rules of the "state in which it sits." *Buffalo Molded Plastics, Inc. v. Plastic Mold Technology, Inc. (In re Buffalo Molded Plastics, Inc.)*, 354 B.R. 731, 750 (Bankr. W.D.Pa. 2006) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *Shuder v. McDonald's Corp.*, 859

6

Case 5:12-ap-00156-RNO    Doc 25    Filed 10/02/12    Entered 10/02/12 09:51:51    Desc
Main Document    Page 6 of 9

F.2d 266, 269 (3d Cir. 1988); *Kaplan v. First Options of Chicago, Inc. (In re Kaplan)*, No. 94-0901, 1995 WL 500599, at *10 (E.D.Pa. Aug. 22, 1995). Because this Court sits in the Middle District of Pennsylvania, Pennsylvania choice-of-law rules apply.

Pennsylvania's standard for choice-of-law questions is a hybrid of two tests: the "most significant relationship" approach of the Restatement (Second) of Conflicts of Law and the governmental interest approach. *On Air Entertainment Corp. v. National Indem. Co.*, 210 F.3d 146, 150 (3d Cir. 2000); *In re Buffalo*, 354 B.R. at 750; *Taylor v. Mooney Aircraft Corp.*, 430 F.Supp.2d 417, 428 (E.D.Pa. 2006). The Pennsylvania approach is a two-step analysis. First, the court must determine whether there is a true conflict of laws or merely the existence of a "false conflict." *In re Buffalo*, 354 B.R. at 750. If a true conflict exists, the reviewing court then determines which state has the greatest interest in the application of its law through use of the "most significant relationship" test of the Restatement (Second) of Conflict of Law. *Huber v. Taylor*, 469 F.3d 67, 73-75 (3d Cir. 2006); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). To resolve whether a true conflict exists, courts compare the competing state laws and the governmental interests they represent. *In re Buffalo*, 354 B.R. at 750.

Here, the law I must examine is the New York Lien Law referenced in the Note and by both parties in their pleadings. The pertinent section reads:

> § 70. Definition of trusts:
>
>> 1. The funds described in this section received by an owner for or in connection with an improvement of real property *in this state*, including a home improvement loan, or received by a contractor under or in connection with a contract for an improvement of real property, or home improvement, or a contract for a public improvement *in this state*, or received by a

7

Case 5:12-ap-00156-RNO    Doc 25    Filed 10/02/12    Entered 10/02/12 09:51:51    Desc
Main Document    Page 7 of 9

> subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property . . .

McKinney's Lien Law § 70 (emphasis added). By its plain language, the statute applies only to projects located in New York state and contracts formed in that state. Indeed, federal case law supports the statute's geographical limitations. *See Carrier Corp. v. J. E. Schecter Corp.*, 347 F.2d 153, 154 (2d Cir. 1965) ("[N.Y. Lien Law] does not apply to improvements to real property located outside State of New York."); *Zysk v. Smith*, No. 03-CV-4334, 2010 WL 5027493, at *3 (E.D.N.Y. Dec. 2, 2010) (stating N.Y. Lien Law inapplicable to improvements made in Vermont).

Neither party has cited a Pennsylvania statute which would impose a similar trust on the funds received by Dombroski. Thus, on the first prong of the test, I find there is a true conflict between the laws of New York and Pennsylvania.

Applying the second prong of the test—i.e., which state has the most significant relationship and greater interest—is more problematic. There are numerous unknown facts at this stage of the action that are necessary for me to make my determination. For instance, where were the materials purchased? What are the locations of the projects in which the materials were used? How and where was Erie paid by Dombroski? Where was the Note signed? Although Plaintiff's Statement of Material Facts is deemed admitted, the information given is devoid of evidence relating to the transactions between the parties. In sum, there are too many unknown facts to effect a choice-of-law decision. Because the choice-of-law could well impact the ultimate outcome of the case, I cannot determine that Erie is entitled to judgment as a matter of law; summary judgment is, therefore, inappropriate.

8

## IV. Conclusion

The choice-of-law analysis requires an evidentiary record in order for the remaining issues to be decided; the record that exists now is simply too sparse to make that determination. Therefore, I conclude that Erie is not entitled to judgment as a matter of law. The Motion for Summary Judgment is denied. An Order will be entered consistent with the foregoing Opinion.

By the Court,

*Robert N. Opel II* (signature)

Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: October 2, 2012